**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

KENWYN B.,[1]                                    **1:19-cv-01128-BR**

       **Plaintiff,**                            **OPINION AND ORDER**

**v.**

**Commissioner, Social**
**Security Administration,**

       **Defendant.**


**TIM D. WILBORN**
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137
(702) 240-0184

       Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

    [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**SHATA STUCKY**
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S221A
Seattle, WA 98104-7075
(206) 615-2909

        Attorneys for Defendant


**BROWN, Senior Judge.**

        Plaintiff Kenwyn B. seeks judicial review of a final
decision of the Commissioner of the Social Security
Administration (SSA) in which he denied Plaintiff's applications
for Supplemental Security Income (SSI) and Disability Insurance
Benefits (DIB) under Titles XVI and II of the Social Security
Act.

        For the reasons that follow, the Court **AFFIRMS** the decision
of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

        Plaintiff filed her applications for SSI and DIB on
August 14, 2015.  Tr. 209, 215.[2]  Plaintiff alleged a disability
onset date of October 31, 2014.  Her applications were denied
initially and on reconsideration.  An Administrative Law Judge

---

        [2] Citations to the official transcript of record filed by
the Commissioner on November 25, 2019, are referred to as "Tr."

(ALJ) held a hearing on March 21, 2018.  Tr. 33-62.  Plaintiff
and a vocational expert (VE) testified at the hearing, and
Plaintiff was represented by an attorney.

On July 5, 2018, the ALJ issued an opinion in which he
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 13-26.  Pursuant to 20 C.F.R. § 404.984(d) that
decision became the final decision of the Commissioner on May 23,
2019, when the Appeals Council denied Plaintiff's request for
review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07
(2000).


## BACKGROUND

Plaintiff was born on January 9, 1969.  Tr. 209.  Plaintiff
was 49 years old at the time of the hearing.  Plaintiff graduated
from high school and has "some college."  Tr. 38.  Plaintiff has
past relevant work experience as a driver, floral arranger, and
pharmacy technician.  Tr. 55.

Plaintiff alleges disability due to morbid obesity,
diabetes, chronic myofacial pain, polyneuropathy, hypertension,
spinal stenosis, degenerative disc disease, facet spondylosis,
depression, and anxiety.  Tr. 65.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the

medical evidence.  *See* Tr. 18-19, 21-24.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of

evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the

Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her October 31, 2014, onset date. Tr. 15.

At Step Two the ALJ found Plaintiff has the severe impairments of degenerative disc disease of the lumbar and

cervical spine, degenerative joint disease of the right knee, obesity, osteoarthritis of the left shoulder, carpal-tunnel syndrome in the bilateral wrist, and peripheral neuropathy Tr. 15. The ALJ found Plaintiff's hypertensive heart disease, diarrhea, obstructive sleep apnea, diabetes mellitus, depression, and anxiety are not severe impairments. Tr. 16-17. The ALJ also found Plaintiff's seizure disorder is not a medically determinable impairment. Tr. 16.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 20. The ALJ found Plaintiff has the RFC to perform light work

> except she can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She can stand and/or walk for a total of four hours and sit a total of six hours in an eight-hour workday. She can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can frequently balance, kneel, and crouch. She can occasionally stoop but never crawl. She must avoid concentrated exposure to vibration, hazardous machinery and unprotected heights. Additionally, bilateral handling and fingering is limited to frequent.

Tr. 20.

At Step Four the ALJ found Plaintiff is unable to perform her past work. Tr. 24.

At Step Five the ALJ found Plaintiff can perform other work that exists in the national economy. Accordingly, the ALJ found

Plaintiff is not disabled.  Tr. 25.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) partially rejected the lay-witness statement of Justin Funk, Plaintiff's son; (3) did not address the opinions of treating physicians Peter Grant, M.D., and Kiley Ziegler, M.D.; (4) gave only "some weight" to the opinion of examining psychologist Thomas Shields, Ph.D.; and (5) gave only "some weight" to the opinion of Mason Harrison, N.P., treating nurse practitioner.

## I.   The ALJ did not err when he partially rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

9 - OPINION AND ORDER

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id.* The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that she has not worked since October 2014 because she experiences pseudoseizures that affect her communication. She stutters, she cannot speak, her hands and head shake, and she cannot communicate when she has a seizure. Plaintiff's seizures last a few minutes, but she experiences "a period of confusion for several minutes, sometimes up to an hour after the seizure." Tr. 41. Plaintiff had seizures during her time as a driver, but "to date [she has not] had a seizure while [she has] been behind the wheel of a vehicle" because she has "auroras . . . pre-seizure and [she is] able to get the vehicle to the side of the road." Tr. 43. Plaintiff stated she had four seizures between January 2018 and the March 21, 2018, hearing. Plaintiff states she also has "a lot of pain and swelling in [her] legs and feet," pain in her lower back, and pain in her neck that makes it hard for her to turn her

head.  Tr. 44.  Plaintiff stated she has swelling in her legs
and feet every day, and she has to elevate her feet for a
total of five or six hours a day to reduce swelling.  Plaintiff
also has lower-back pain.  Although surgery "has been suggested
. . . [, she] was told [she] cannot have [it] because of [her
weight] and because of the narrowing in [her] spinal column."
Tr. 46.  Plaintiff must change positions frequently to alleviate
her back pain.  Plaintiff also has pain in both of her shoulders,
wrists, and hands.  Although Plaintiff has had carpal-tunnel
surgery three times and an ulnar-nerve release on one elbow, she
continues to have pain and discomfort in her arms and hands.
Plaintiff has pain in her neck and lower back as well as swelling
in her legs and feet when she does dishes.  Plaintiff has a hard
time bending down to get clothing out of the dryer and needs help
carrying the laundry basket due to back pain.  The ALJ asked
Plaintiff if she could "maintain work activity consistently" if
she had a job

>that would allow [her] to sit and stand whenever
[she] wish[ed], [she] wouldn't be able to elevate
[her] feet, but sit and stand whenever [she]
wish[ed], and a job that would require [her]
lifting no more than ten pounds occasionally and
light weights, pencil, pens, more frequently and a
job that would require very little contact with
coworkers and general public, maybe that wouldn't
be a problem, but anyway, very little contact with
both, but a job that would require [her] to be
present and working and be on task during an eight
hour work day, with typical breaks and a job that
would require you to be working a 40 hour work
week.

Tr. 51-52.  Plaintiff stated she did not believe she could do such a job because she has difficulty concentrating due to pain.

Plaintiff testified her activities of daily living have "not changed significantly since" she completed her October 19, 2015, Adult Function Report in which she stated she sits on the edge of her bed for ten or fifteen minutes when she wakes up in the morning before she tries to stand due to stiffness and pain.  She then sits in her recliner.  Throughout the day she "putters" around the house doing parts of tasks and taking frequent breaks sitting in the recliner due to pain.  Plaintiff feeds her fish, lets her dog out, brushes her dog, and rolls a ball for her dog. Plaintiff has difficulty falling asleep and wakes frequently during the night due to pain and muscle spasms.  Plaintiff prepares meals with help from her family.  Plaintiff can vacuum, fold laundry, load the washer, sweep, mop, dust, and make beds, but she must take breaks to recline.  Plaintiff shops for groceries weekly with help from her family.  Plaintiff enjoys watching television and movies and talking to friends and family on the telephone or over social media, but she avoids crowds and social gatherings due to anxiety.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not

entirely consistent with the medical evidence and other evidence in the record."  Tr. 23.

Although Plaintiff stated she suffers from swelling in her lower extremities to the degree that she must elevate her legs for five or six hours every day, the ALJ noted the medical record consistently reflects Plaintiff did not have any edema or cyanosis.  *See, e.g,* Tr. 583, 872, 883, 934, 945, 991, 997.  In addition, an ultrasound of Plaintiff's legs "demonstrat[ed] complete compressibility and normal flow."  Tr. 378.  Plaintiff points to a record from January 2015 in which she reported having edema, but on physical examination Plaintiff did not have any edema.  Tr. 392.  Plaintiff also relies on an examination in August 2015 in which Plaintiff had grade-two edema, which indicates a three-to-four millimeter indentation that lasts fifteen seconds or less when pressure is applied.  Tr. 366.  Plaintiff's medical treatment provider at the time, however, did not direct Plaintiff to elevate her legs to address edema.  In fact, the record does not contain any recommendation by a medical professional that Plaintiff elevate her legs.

The ALJ also noted a July 2015 computed topography (CT) scan of Plaintiff's cervical spine reflected "mild to moderate degenerative disc disease and facet spondylosis."  Tr. 537.  A July 2015 x-ray revealed "[m]ild disc narrowing [at] C5-C6 C6-C7, with associated mild vertebral spurring."  Tr. 708.  A February

2016 x-ray of Plaintiff's lumbar spine reflected "vertebral body heights are within normal limits" and "disc spaces demonstrate mild narrowing at L5-S1." Tr. 763. A February 2016 MRI reflected mild facet arthropathy at L1-L2 and L2-L3; "moderate facet arthropathy . . . with ligamentum flavum thickening[,] minimal central canal stenosis . . . [, and] moderate bilateral lateral recess narrowing" at L3-L4; a "[s]mall circumferential disc bulge . . . with a focal RIGHT paracentral disc tear and extrusion [that] . . . encroaches upon the RIGHT L4 nerve root in the lateral recess and the LS nerve root in the central canal . . . [as well as] moderate facet arthritis with moderate LEFT lateral recess[,] foraminal narrowing [and] moderate RIGHT lateral recess[, and] mild RIGHT foraminal narrowing" at L4-L5; and "mild central canal stenosis[,] moderate facet arthropathy[,] . . . moderate to severe LEFT lateral recess narrowing with encroachment upon the LEFT L5 nerve root[, and] moderate RIGHT lateral recess narrowing" at L5-S1. Tr. 767. A November 2017 MRI of Plaintiff's lumbar spine reflected "no evidence of disc bulge, protrusion[,] herniation[,] . . . significant degenerative change[, or] . . . appreciable narrowing of the central canal or neural foramen" at T12-L1; mild degenerative changes with mild facet hypertrophy and "no significant neural foraminal narrowing" at L1-L2 and L2-L3; mild degenerative changes with mild facet hypertrophy and "minimal narrowing or the central canal" at L3-

L4; mild degenerative changes and "a diffuse disc bulge" with "a very tiny LEFT paracentral disc protrusion," bilateral facet hypertrophy, mild narrowing of the central canal, and moderate narrowing of the neural foramen at L4-L5; and degenerative changes with "loss of height of the disc space and prominent osteophytes," a diffuse disc bulge "with a small central disc protrusion," mild facet arthropathy, and "moderate to severe narrowing of both neural foramen LEFT worse than RIGHT" at L5-S1. Tr. 1028-29.

The ALJ also noted Plaintiff was referred for physical therapy for her back pain a number of times from 2015 to 2017. In January 2016 Plaintiff's physical therapist noted Plaintiff "appears to be responding with the current treatment approach." Tr. 842. On February 24, 2016, however, Robert McLane, P.T.A., noted Plaintiff's "prescription for physical therapy has expired. [Plaintiff] cancelled many times which caused her therapy sessions [to] be very intermittent." Tr. 837. In July 2016 Plaintiff began physical therapy and tolerated water exercises well and with "minimal low back soreness." Tr. 906. On September 9, 2016, however, Jeff Wood, M.S.P.T., noted Plaintiff "was seen in therapy for 5 treatments and was last seen on 8/3/16. She cancelled her last 3-4 visits and her therapy scrip has not been renewed. We will plan to [discontinue] her from therapy at this time." Tr. 899. Plaintiff also underwent

physical therapy for her wrist and hand pain.  On September 22, 2015, Mary Paige Barker, P.T., noted Plaintiff had "made excellent progress in therapy with improved strength and ROM of the wrist and hand.  [Plaintiff] has returned to all AOL's without difficulty and reports that she can push up from a chair and push a grocery cart without any hand or wrist pain.  Patient also has restored full grip strength and feels she is ready to self manage with exercises on her own."  Tr. 627.

In addition, the ALJ pointed out that on December 14, 2015, Kenny Durant, P.A.C., noted x-rays of Plaintiff's hips were negative.  Durant diagnosed Plaintiff with bursitis in her right hip and provided Plaintiff with stretching exercises.

Finally, the ALJ noted Plaintiff received mainly conservative treatment for her back, hip, hand, and wrist that included physical therapy, stretching, and analgesics.

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**II.  The ALJ did not err when he gave limited weight to the Third-Party Function Report of Plaintiff's son, Justin Funk.**

Plaintiff alleges the ALJ erred when he gave some weight to the Third-Party Function Report of Plaintiff's son, Justin Funk.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

In his October 21, 2015, Third-Party Function Report Funk noted Plaintiff's lower back and extremities frequently hurt, and her feet and ankles swell when she sits upright or stands for ten or fifteen minutes. Plaintiff "takes a lot of breaks in her recliner with her feet up," and usually by four or five in the afternoon "she hurts so bad she is in her recliner until bedtime." Tr. 257. Plaintiff's hands go numb and begin to swell and hurt when she sits at a desk or table or drives "for any length of time." Tr. 250. Plaintiff's back sometimes hurts "so bad[ly] she can't stand up," she walks with a limp, and "her legs cut out on her making her fall sometimes so she uses a cane." Tr. 250. Plaintiff can do "little bits [of housework] at a time," and she needs help with all of the household chores.

Tr. 252. Plaintiff shops weekly for groceries and household items, but she does not go out alone due to mobility issues. Plaintiff does not attend social gatherings because she gets anxious, but she talks to friends on the telephone and computer.

The ALJ gave only "some weight" to Funk's statements on the grounds that they were not supported by medical evidence in the record and are based, in part, on Plaintiff's self-reported symptoms, which the Court has already concluded the ALJ properly partially rejected. Germane reasons for discrediting lay-witness testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012); *Molina*, 674 F.3d at 1117 (When a lay witness does not describe limitations beyond those described by Plaintiff and the ALJ properly rejected the Plaintiff's subjective symptom testimony, any error in rejecting the lay-witness testimony would be harmless.).

The Court concludes on this record that the ALJ did not err when he partially rejected Funk's Third-Party Function Report because the ALJ gave reasons germane to Funk supported by substantial evidence in the record.

**III. The ALJ did not err when he did not address the opinions of treating physicians Peter Grant, M.D., and Kiley Ziegler, M.D.**

Plaintiff contends the ALJ erred when he did not address the opinions of Drs. Grant and Ziegler, treating physicians.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

Although Plaintiff refers to the "opinions" of Drs. Grant and Ziegler, the portions of the record Plaintiff relies on are not, in fact, opinions, but rather the treatment notes of Drs. Grant and Ziegler.  For example, Plaintiff states Dr. Grant conducted an EMG study of Plaintiff's hands and wrists on December 6, 2016, and asserts he "opined Plaintiff should avoid repetitive use of the left arm and hand."  Pl.'s Opening Br. at 13.  Dr. Grant, however, did not offer an opinion.  Instead his treatment notes indicate the EMG reflected "evidence of [Plaintiff's] old median neuropathy in the carpal tunnel area and a very mild recurrent component."  Tr. 934.  Dr. Grant found Plaintiff likely had "chronic posttraumatic myofacial left neck,

shoulder, and penscapular and upper extremity pain syndrome with associated upper extremity referred symptoms" and "minimal recurrence of left carpal tunnel syndrome." Dr. Grant recommended physical therapy and noted "no surgical intervention is felt to be warranted for her minimally recurrent left carpal tunnel syndrome." Tr. 934. Dr. Grant noted "conservative efforts may be helpful with wrist splinting, NSAID use, and avoidance of repetitive/strenuous use of the left arm and hand." *Id*. Dr. Grant's chart treatment notes are recommendations rather than a medical opinion, and, as such, the ALJ was not required to address or to include them in his analysis. *See Valentine v. Comm'r*, 574 F.3d 685, 691-92 (9th Cir. 2009)("Dr. Storzbach's observation about 'highly routinized, overlearned tasks with low cognitive demand' is neither a diagnosis nor statement of Valentine's functional capacity. It is rather a recommended way for Valentine to cope with his PTSD symptoms. The ALJ therefore did not err by excluding it from the RFC.").

Similarly, Plaintiff points to a note by Dr. Ziegler in which, according to Plaintiff, he "opined Plaintiff would benefit from activity modification, such as limiting elbow flexion for prolonged times." Pl.'s Opening Br. at 13. The note Plaintiff refers to is part of a March 2, 2017, record of treatment by Dr. Ziegler in which he states the following:

> The patient has electrodiagnostic evidence of left
> carpal tunnel syndrome, but provocative testing is

negative.  She does have provocative testing
consistent with cubital tunnel syndrome, though no
electrodiagnostic evidence.  I would agree that
the majority of her shoulder, neck, and
periscapular pain is likely myofascial in nature.
She may have some more proximal peripheral nerve
compression, though this is difficult to be sure.
I do not think that she will benefit from repeat
carpal tunnel release.  She would benefit from
treatment of her cubital tunnel syndrome.  We
discussed appropriate activity modifications,
including limiting elbow flexion for prolonged
time as well as direct pressure on the medial side
of the elbow.  Nonsteroidal anti-inflammatory
medications can be helpful as needed.  She will
make these appropriate activity modifications, and
can follow-up with me in the future if she should
have further problems.

Tr. 889.  As with Dr. Grant, this is a treatment note rather than

an opinion.  Treatment notes are merely recommendations, and, as

such, the ALJ was not required to address or to include them in

his analysis.  *See Valentine*, 574 F.3d at 692.

The Court concludes on this record that the ALJ did not err

when he did not include in his evaluation of Plaintiff's RFC

recommendations found in the treatment notes of Drs. Grant and

Ziegler.

**IV.  The ALJ did not err when he gave only "some weight" to the
opinion of Dr. Shields, examining psychologist.**

As noted, Plaintiff contends the ALJ erred when he gave only

some weight to the opinion of Dr. Shields.

An ALJ may reject a treating physician's opinion when it is

inconsistent with the opinions of other treating or examining

physicians if the ALJ makes "findings setting forth specific,

legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On November 24, 2015, Dr. Shields conducted a psychological evaluation of Plaintiff. Dr. Shields noted Plaintiff's mood was euthymic, her affect was appropriate, and she fully participated in the evaluation. Plaintiff was

> alert and fully oriented to person, place, time, and situation. She correctly spell[ed] the term 'world' both forwards and backwards. She repeat[ed] a string of seven digits forwards and five digits backwards. Her registration appear[ed] intact as she repeat[ed] three nouns immediately. On a simple measure of recent auditory memory, she retrieve[d] all three of the initial three nouns after one intervening task.

Tr. 664. As for Plaintiff's cognition, reasoning, and perception, Dr. Shields noted Plaintiff's

> intellect is casually estimated in the average range. She correctly names the number of days, weeks, and months in one year. She correctly names the first president of the United States. She names the last four presidents of the United States. Her abstracting ability appears intact as assessed by her ability to name the conceptual similarity between seemingly different items. For instance, she states a cat and a monkey are "animals." She states a guitar and a flute are "musical instruments." She states an airplane and a bicycle are "modes of transportation." Her

> thought process is sequential and goal-directed.
> There are no indications of pressured thinking,
> derailment, delusional thinking, or hallucinosis
> [*sic*] noted or reported.

Tr. 664.  Dr. Shields diagnosed Plaintiff with "Persistent

depressive disorder (dysthymia), fairly well controlled on

medication; Panic disorder; Agoraphobia; Adjustment disorder with

anxiety (worrying and stress about her impoverished financial

situation)."  Tr. 664.  Dr. Shields concluded Plaintiff

> is capable of understanding, remembering, and
> carrying out both simple and detailed
> instructions.  There are no indications of
> disruption in her capacity to sustain
> concentration on tasks over extended periods of
> time, although intermittent bouts of anxiety/
> panic are likely to cause her to be distracted in
> some settings.  She was able to sustain
> concentration and remain engaged without
> complication throughout this interview process.
> Socially, she is anxiety [*sic*], prone to panic in
> crowded settings, and has relied more and more on
> avoidance as a coping style.  Without appropriate
> psychological treatment, the prognosis of her
> panic and agoraphobia is poor.  Given the recent
> onset of the symptoms, however, her prognosis is
> expected to be favorable if she becomes targeted
> psychotherapy [*sic*].  At this time, persistence
> and pace are expected to be limited by her panic
> disorder and avoidant behavior.  Her stress
> tolerance is also low and she is known to
> experience pseudo-seizures in response to
> high-stress situations.

Tr. 665.

The ALJ gave only some weight to Dr. Shields's opinion as to

Plaintiff's difficulties with concentration, persistence, and

pace.  The ALJ noted Dr. Shields's examination reflected

Plaintiff did not have any "indications of disruption in her

capacity to sustain concentration on tasks over extended periods of time," and Plaintiff's mental-status examination did not reflect any problems with memory, concentration, or persistence. In addition, Plaintiff's medical providers did not note Plaintiff had any problems with concentration, persistence, pace, memory, or interpersonal interactions.

On this record the Court concludes the ALJ did not err when he gave only some weight to Dr. Shield's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

**V.   The ALJ did not err when he gave only "some weight" to the opinion of Mason Harrison, N.P., treating nurse practitioner.**

Plaintiff alleges the ALJ erred when he gave only "some weight" to the opinion of Mason Harrison, N.P., Plaintiff's treating nurse practitioner.

Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 416.902.  Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors.  SSR 06-03p, at *2.  Factors the ALJ should consider when determining the weight to give an opinion from those "important" sources include the length of time the source

has known the claimant and the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise. SSR 06-03p, at *4. The ALJ must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6.

On November 24, 2015, N.P. Harrison, completed a Residual Functional Capacity Form in which he noted he had seen Plaintiff "several times annually for 5+ years." Tr. 668. N.P. Harrison noted Plaintiff has chronic pain in her back and lower extremities, numbness and weakness in her lower extremities, sleep apnea, muscle spasms, migraines, and depression. N.P. Harrison stated Plaintiff can stand for ten or fifteen minutes at one time; can sit for 20 minutes at one time; can walk less than 100 feet on a "bad pain day" and one or two blocks on "a good day"; can lift and/or carry five-to-ten pounds "during an eight-hour period"; can lift and/or carry less than five pounds "regularly/daily"; can "rarely" reach above her shoulders, reach "down to waist level," or reach "down towards the floor"; and can "frequently carefully handle objects" with her fingers. Tr. 670. N.P. Harrison noted Plaintiff needs to lie down three-to-five times a day to relieve pain and numbness. Plaintiff also cannot

stand and/or sit for six-to-eight hours because of "numbness, tingling, and pain."  Tr. 670.

The ALJ gave only some weight to N.P. Harrison's opinion because it was based on Plaintiff's subjective reports and was not supported by the medical evidence.

This Court has already concluded the ALJ did not err when he partially rejected Plaintiff's testimony because it was not supported by the record.  The Court, therefore, also concludes the ALJ did not err when he gave only some weight to N.P. Harrison's opinion because the ALJ gave reasons germane to N.P. Harrison based on substantial evidence in the record.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 9th day of April, 2020.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge